Jimmy A. MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 46933.

Court of Criminal Appeals of Texas.

March 20, 1974.

Rehearing Denied April 10, 1974.

Don Gladden and Marvin Collins, Fort Worth, for appellant.

Tim Curry, Dist. Atty., W. E. Roberts, R. J. Adcock, and J. J. Heinemann, Asst. Dist. Attys., Fort Worth, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of murder with malice. The jury assessed punishment at 199 years.

On December 9, 1970, Lester Harvey, the manager of the Ace-High Liquor Store in Fort Worth, was killed during a robbery. The cash register was taken at the time of the offense and subsequently found

by police officers as a result of an oral confession made by the appellant.

Appellant's only contention with respect to the sufficiency of the evidence is that there is no proof to show that the deceased was killed "by cutting and stabbing him with a broken bottle" as alleged in the indictment. The appellant argues that the State's evidence shows that a knife was used. He relies primarily on the alleged variance in Detective Sinclair's version of the oral confession at the hearing on his motion for discovery and the trial on the merits.

Detective Sinclair testified at the trial that the appellant had stated: ". . . he started jabbing him (the deceased) with a broken bottle." The version contained in the State's answer to the motion for discovery was that the appellant "indicated that he kept hitting the man with the broken bottle until he fell."

The use of the words hitting or jabbing is of little or no importance. If the proof showed that the deceased died as a result of stabbing or cutting with a broken bottle then this would be sufficient. The appellant admitted to Detective Sinclair that he used a broken bottle.

The question remaining to be answered is whether the medical examiner's testimony shows that the deceased was killed by a knife or by a broken bottle. Appellant points to the following portion of Dr. Gwozdz's testimony on cross-examination:

"Q. . . . Back to the wound number four in the upper chest there. I believe you said in your report and you testified here it was made by a sharp flat instrument, is that true?

"A. Right.

"Q. So, then wounds number three at the neck and four in the chest could be consistent with a knife type wound or a flat sharp instrument type wound, is that correct?

"A. Any flat sharp instrument.

"Q. Yes, sir, and that could be a knife, is that true?

"A. Could be.

"Q. As well as it could have been a bottle or anything else?

"A. This is correct."

Dr. Gwozdz testified that the wounds could have been caused by glass. This, in connection with the oral confession, is sufficient for the jury to find that the deceased died as a result of cutting or stabbing with a broken bottle as alleged in the indictment.

Next, appellant contends that the trial court erred when it failed to conduct a hearing to determine his competence to stand trial. Appellant's counsel requested and the court so approved an order for a psychiatrist to evaluate the appellant. The record is silent as to the court-appointed psychiatrist's findings. Further, counsel did not re-urge his request for a pre-trial sanity hearing nor did he object to the lack of findings or formal determination at the start of the trial on the merits. In fact, counsel announced ready and the appellant personally entered his own plea.

Appellant, by announcing that he was ready and entering his plea without any suggestion of insanity to the court, waived his right to a separate pre-trial hearing. Zapata v. State, Tex.Cr.App., 493 S.W.2d 801; Boss v. State, Tex.Cr.App., 489 S.W.2d 580.

Complaint is made that the trial court erred in denying his request for the inspection of the grand jury testimony. He argues that there may have been a discrepancy in the testimony of certain witnesses; therefore, he is entitled to the grand jury testimony. We have examined the record and do not find that the appellant has

shown any particularized need nor has he shown nor does the record reflect any suppression or attempted suppression of evidence.

■ In the absence of any showing of a particularized need for such record, the trial judge did not err in overruling the motion. Bryant v. State, Tex.Cr.App., 423 S.W.2d 320.

■ The complaint that it was error for the trial court to deny his motion for a copy of the criminal record of the deceased is without merit. There is no showing that the deceased had such a record.

■ Next, the appellant complains of the failure of the trial court to allow him to take Detective Sinclair's deposition. The request to take Sinclair's deposition was a part of the appellant's discovery motion. It was not in compliance with Article 39.02, Vernon's Ann.C.C.P., in that it contained no affidavit. It stated no facts which would show a good reason for his deposition. The record does not reflect that the witness refused to talk to the appellant prior to trial. Under the facts of this case, no abuse of discretion is shown. See Aguilar v. State, Tex.Cr.App., 468 S.W.2d 75, and Beshears v. State, Tex.Cr.App., 461 S.W.2d 122.

■ The appellant also contends that the trial court erred in admitting testimony concerning his in-custody oral confession. The record shows that the appellant was warned of his rights on three separate occasions prior to giving the confession. The requirements of Article 38.22, V.A.C.C.P., and Miranda [1] were met. Further, as also required by Article 38.22, supra, with regard to oral confession, the appellant's confession led to the finding of "secreted or stolen property"—the cash register taken from the liquor store where the deceased met his demise. This contention is overruled.

■ Appellant next contends that the trial court erred in failing to suppress, on its own motion, the in-court identification of him by two of the State's witnesses. The record is silent as to any objection by appellant at the time of the in-court identification by the witness Susan Anderson. She testified that she recognized the appellant, though she did not identify him at the lineup which had been conducted prior to the trial. Absent an objection, the trial court did not err in failing to conduct a hearing on the pre-trial identification procedure. Martinez v. State, Tex.Cr.App., 437 S.W.2d 842.

■ Appellant also argues that because Trudy Evans did not positively identify him her testimony is inadmissible. This is without merit. The fact that a witness cannot be positive in her identification goes to the weight of the testimony and not to its admissibility. Williams v. State, Tex.Cr.App., 466 S.W.2d 313.

Next, appellant challenges the jury selection process used in Tarrant County. The record reflects that the jury panel for the week was selected by electronic means.

Article 2100a, V.A.C.S., Section 2(c) and (d) provides:

"(c) It shall provide a fair, impartial, and objective method of selecting persons for jury service with the aid of mechanical or electronic equipment.

"(d) It shall designate the clerk of the district courts as the official to be in charge of the selection process and shall define his duties."

The appellant argues that Section 2(d) of Article 2100a, supra, was not complied with in that the district clerk did not exercise supervision over the computerized jury selection process.

An examination of the record reveals that the district judges of Tarrant County

---

1. Miranda v. Arizona, 334 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

at their meeting on November 4, 1969, adopted a plan to be submitted to the Commissioners Court for the use of electronic means in the random selection of jurors as authorized by article 2100a, supra. The plan was adopted by the Commissioners Court at its meeting shortly thereafter and a contract let to Commercial Computer Services, Incorporated. We have examined the plan as well as the testimony by Joe K. Matthews of Commercial Computer Services, Inc., as to the process involved and have determined that it is a random and impartial selection process as required by the statute. In fact, it is so complex it is difficult to envision just how it could be other than random and impartial.

We are now left with the question as to whether or not the district clerk exercised the duties required of him by the statute.

The plan as submitted by the district judges and adopted by the Commissioners Court charged the district clerk as follows:

The District Clerk shall be in charge of the jury selection process, and he will be responsible for seeing that the names of all qualified jurors on the voters registration lists are on the magnetic tapes, and that the weekly selection of jurors is made impartially and at random. It will also be his duty to see that the jury lists are prepared and the notification letters mailed each week."

The then district clerk[2] was present at the meeting when the plan was adopted and the contract was let to Commercial Computer Services, Inc. He was instructed to call 500 jurors for each jury week until further notice. The record reflects that updated voter registration lists from which the names of prospective jurors are taken are regularly submitted to the computer corporation for inclusion on the magnetic tapes.

The statute does not prohibit the use of a private computer company.[3] It only states that the district clerk shall be designated as the official in charge of the selection process and that his duties shall be defined. We note that the record shows proper juror forms are mailed to all prospective jurors. The chief clerk of the voter registration department also testified that the computer services company was continually furnished an update on the Tarrant County voting registration list by his office.

■ The statute does not set out with particularity the duties of the clerk. However, in addition to carrying out the orders of the Commissioners Court, it would be a good practice for the clerk or his deputy to personally supervise the jury selection process in every way possible.

■ We hold that the procedure used here is such as was contemplated by the statute and that, while the district clerk is charged with overall responsibility, the use of a private computer service as shown by this record is not violative of the intent of the statute. See Smith v. State, Tex.Cr. App., 472 S.W.2d 520. Appellant's contention is overruled.

■ Appellant's challenge to the State's motion to seek the death penalty was rendered moot when the punishment of death was not assessed. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1973).

We have examined the other grounds raised by appellant in his brief and find them to be without merit.

The judgment is affirmed.

2. The present district clerk did not take office until January 1, 1971.

3. The record reflects that both Dallas and Harris Counties own their computers and as a result are actually located in the district clerk's office.