Randall Keith MORROW, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–03–00189–CR.

Court of Appeals of Texas, Texarkana.

Submitted May 11, 2004.

Decided June 30, 2004.

---

Kevin McCarter, Marshall, for appellant.

Al Davis, Asst. Dist. Atty., Joe Black, Harrison County Dist. Atty, Marshall, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Randall Keith Morrow pled guilty to aggravated kidnapping.[1] The jury found him guilty as instructed and assessed his punishment at forty years' imprisonment. He appeals,[2] contending the trial court erred by (1) denying his motion to suppress an in-court identification; (2) denying his motion to take depositions; and (3) denying a hearing on his motion for new trial. Randall also contends his trial counsel rendered ineffective assistance.

## I. Factual Background

Annie Morrow testified she and Randall were married in October 2002, after a brief courtship. The marriage was rocky from the start, and the two separated in Decem-

ber 2002. On the morning of January 28, 2003, Randall went to Marshall, where Annie was living. Annie telephoned the police, and Randall left. Undeterred, he returned at 3:00 a.m. and told Annie her eldest son was ill in the hospital. Annie rushed to the hospital, but her son was not there. Randall admitted his lie, telling Annie he wanted to get her out of the house so they could talk. Randall convinced Annie to talk in his vehicle, out of the cold weather. When she acquiesced, he sped off to his mother's house on the lake. There, he accused Annie of cheating on him, and he beat and raped her.

The next day, Randall took Annie back to Marshall and allowed her to pick up some clothes. He then took her back to his mother's property, where he assaulted her again, this time stabbing her in the chest, puncturing her lung. He then locked her in the trunk of his car and left the premises in that vehicle. Annie pulled wires and yelled for help. At one point, the car stopped and she heard voices outside. She began beating on the inside of the trunk and screaming, "Somebody help me. He's going to kill me."

Deborah Johnson testified she was at Hawk's Grocery Store when a man pulled up in a tan Honda Accord. She heard a woman's voice coming from inside the trunk saying, "Let me out. He's trying to kill me. Will you help me? Will somebody please help me?" She looked at the man driving the Honda, and he told her it was his sister who had run away from

---

1. A violation of Tex. Pen.Code Ann. § 20.04 (Vernon 2003).

2. This Court originally determined Randall failed to timely perfect his appeal, and we dismissed his appeal for want of jurisdiction. See Morrow v. State, No. 06–03–00189–CR (Tex.App.-Texarkana Sept.19, 2003, no pet.) (not designated for publication). A judgment nunc pro tunc, reflecting the correct date on

which Randall's sentence was imposed, was then entered at the trial court level. According to the corrected judgment, Randall did, pursuant to Tex.R.App P. 26.2, timely perfect his appeal. We, therefore, granted his motion for rehearing and reinstated his appeal. See Morrow v. State, No. 06–03–00189–CR (Tex. App.-Texarkana Oct. 16, 2003, order) (not designated for publication).

home. Deborah went into the store and told the attendant to telephone the police. The man got back in the car and sped off. The next day, Deborah identified Randall from a photographic lineup as the man in the Honda.

Randall again took Annie back to his mother's house and told her to take a shower. Annie went into the bathroom and tried to shower. She heard the police outside and ran out the back door.

Randall's account of the events, both in his statement to police and in his testimony at trial, differed sharply from Annie's version. He testified Annie voluntarily went with him to his mother's house, where they had consensual sex. Randall testified a fight did ensue over money and over whether Annie was having an affair. They exchanged slaps and then struggled over a knife that had fallen from Annie's purse. After the struggle, Randall noticed Annie had blood on her shirt, but he did not believe it was anything serious. They left together for Marshall, where she got some clothes to change into, and then went back to his mother's property. Another argument ensued over whether Annie was having an affair, and she picked up a stick and hit Randall on the wrist. He also picked up a stick and hit her on the head. They left his mother's property with Annie in the passenger seat, and while he was driving, Annie began kicking the dashboard and grabbing the steering wheel, almost causing an accident. Randall told her he would put her in the trunk to prevent her from doing that, so Annie got out of the car and got in the trunk. Randall slammed the trunk lid on her. He proceeded to a store to get gas, and Annie began "hollering and talking crazy" from the trunk. He left the store, went ten yards and got Annie out of the trunk. They went back to his mother's house, where Annie went to the bathroom and he

walked down the street to his sister's house to cool off. He was at his sister's house for fifteen to twenty minutes when he observed police vehicles going up and down the road. He left the area without being detected and was apprehended six days later.

## II. *Propriety of Identification*

Randall contends Johnson's in-court identification of him was tainted by the impermissibly suggestive photographic lineup she was shown before trial. The day after Johnson observed the Honda at Hawk's Grocery, she went to the police station as requested. Lieutenant Doyle Kuhn showed her a photographic array of six individuals and asked if she saw the gentleman who was at Hawk's Grocery. Johnson immediately identified Randall. Randall moved to suppress the identification and any in-court identification Johnson would potentially make as being tainted by the impermissibly suggestive photographic array. The trial court held a hearing on Randall's motion to suppress and denied it by written order.

### a. *Findings of Fact and Conclusions of Law*

Although expressing an intention at the pretrial hearing to make findings of fact and conclusions of law, the trial court failed to do so. Randall contends this case should be abated to allow the trial court to make those findings of fact and conclusions of law.

■ We previously abated this appeal for the trial court to make findings of fact and conclusions of law concerning whether the statement Randall made to police was voluntary, as required by TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon Supp. 2004). *See Morrow v. State*, No. 06-03-00189-CR (Tex.App.-Texarkana Feb. 24, 2004, order) (not designated for publica-

tion). No comparable rule requires an abatement for findings of fact and conclusions of law concerning the denial of a motion to suppress. While it is better practice for such findings and conclusions to be made when a motion to suppress has been denied, such is not required. *See Jones v. State*, 944 S.W.2d 50, 51 (Tex. App.-Texarkana 1997, pet. ref'd). We therefore will consider Randall's contentions on the suggestive nature of the pretrial photographic array from the record before us. Because the trial court did not make express findings of historical fact, we view the facts in the light most favorable to the trial court's ruling. *See Wallace v. State*, 75 S.W.3d 576, 584 (Tex.App.-Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim.App.2003).

*b. Suggestiveness of Photographic Array*

■ A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim.App.1995). We apply a two-step analysis to determine the admissibility of an in-court identification and ask (1) whether the pretrial identification procedure was impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure created a very substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384, 88 S.Ct. 967; *Barley*, 906 S.W.2d at 33. A defendant bears the burden of establishing by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive. *Barley*, 906 S.W.2d at 33–34. The analysis requires an examination of the totality of the circumstances surrounding the identification. *Id.* at 33.

■ If a court finds that a pretrial identification procedure was impermissibly suggestive, it must then consider the factors enumerated in *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), to determine whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. These nonexclusive factors are: (1) the witness' opportunity to view the criminal; (2) the witness' degree of attention; (3) the accuracy of the witness' description of the suspect; (4) the level of certainty at the time of confrontation; and (5) the time between the crime and confrontation. *Id.*

We have reviewed the record, as well as the photographic array, and find nothing impermissibly suggestive about either the array itself or the officer's use of the array in the questioning of the witness. Kyle Ready, a detective, prepared the photographic array. He further testified he tries to ensure that all the photographs used are as similar as possible. He testified he tries to use similar stature, size, race, skin tone, and hair design. The photographic array in question consisted of a total of six photographs, three arranged in a line above three others. Randall's photograph was in the center of the top line. All the individuals in the photographic array, including Randall, were black males. They all had short hair, close or similar skin tones, and all were face-forward photographs. Kuhn showed Johnson the photographic lineup and explained to her she needed to determine if she saw the person who was at Hawk's Grocery. Kuhn testified he did not tell Johnson that Randall was in the photographic array, and he did not give her any indication of who he believed the perpetrator to be.

Randall contends error was committed because the photographs on either side of his appeared to be looking in his direction, and his head is the largest in the photo-

graphs. Nothing in the evidence shows—or even suggests—these differences were intentional or made for the purpose of suggesting that Randall's photograph was the one the witness should select. Although it may be possible to configure a particular photographic array in a manner to suggest the desired identification, we do not find that the lineup of the array in this case was impermissibly suggestive.

■ Even assuming the photographic array could be considered suggestive, we cannot find from the record that it gave rise to a substantial likelihood of misidentification. Johnson had ample opportunity to view Randall at the grocery store. She observed him in broad daylight, she looked directly at him, and she had a conversation with him. Her degree of attention was certainly heightened when a man with a screaming woman in his trunk arrived at the store. This is evidenced by her telling the attendant to call the police. There was no testimony as to how close Johnson was to Randall, but she immediately identified him and was quite positive. Further, there was little time lapse from the crime to the confrontation, as Johnson identified Randall the day after the incident occurred. Johnson also testified that the arrangement of the two photographs on either side of Randall's photograph, so that they appeared to be looking at Randall, did not influence her decision to identify him. She testified the police did not do anything to suggest Randall's photograph was the correct choice. Given the totality of the circumstances, we find no evidence that the in-court identification of Randall was tainted by an impermissibly suggestive pretrial identification.

III. *Motion to Depose*

■ Randall contends the trial court erred in denying his motion to take the depositions of Annie and the investigating officers. He contended in his motion and accompanying affidavit that Annie refused to talk to his investigator and that the investigating officers were instructed not to speak to defense counsel, except through the district attorney's office. Randall contended that, unless he was permitted to depose these witnesses, he would be unable to effectively cross-examine them and prepare and present evidence to rebut their statements. The trial court denied the motion by written order.

Article 39.02 of the Texas Code of Criminal Procedure governs depositions for a defendant in a criminal case.

> Depositions of witnesses may be taken by the defendant. When the defendant desires to take the deposition of a witness, he shall, by himself or counsel, file with the clerk of the court in which the case is pending an affidavit stating the facts necessary to constitute a good reason for taking the same, and an application to take the same. Provided that upon the filing of such application, and after notice to the attorney for the state, the courts shall hear the application and determine if good reason exists for taking the deposition. Such determination shall be based on the facts made known at the hearing and the court, in its judgment, shall grant or deny the application on such facts.

Tex.Code Crim. Proc. Ann. art. 39.02 (Vernon 1979).

■ This rule authorizes depositions of witnesses by a defendant when such defendant files an application to take such depositions, accompanied by an affidavit stating facts constituting good reason for taking such depositions, and then makes those facts known to the court at a hearing. A trial court has broad discretion in ruling on an Article 39.02 motion and will be reversed only on an abuse of discretion. *May v. State*, 738 S.W.2d 261,

273 (Tex.Crim.App.1987). The mere fact that a defendant seeks the deposition of an adverse witness is not sufficient, standing alone, to show an abuse of discretion. *Tucker v. State*, 461 S.W.2d 630, 634–35 (Tex.Crim.App.1970). The defendant must show that the witness sought to be deposed possesses information critical to a significant factor at trial, or that such witness has information exclusively within that witness' knowledge. *Janecka v. State*, 937 S.W.2d 456, 469–70 (Tex.Crim. App.1996). The court's determination of a defendant's motion must be based on the facts made known at the hearing. *Cruz v. State*, 737 S.W.2d 74, 76 (Tex.App.-San Antonio 1987, no pet.).

The only facts developed at the hearing on Randall's motion pertained to Annie's refusal to talk to Randall's attorney or the investigator working on his behalf. Because no facts were developed at that hearing concerning such refusal by the investigating officers, any error in the trial court's denial of Randall's motion to take their depositions has not been preserved. *See id.*

Randall established good reason, however, for taking Annie's deposition. As the victim of the offense, she obviously possessed information critical to a significant factor at trial. Further, the evidence at the pretrial hearing was undisputed that she refused to talk to the investigator assisting Randall's counsel. The Texas Court of Criminal Appeals has implied in

three cases that a witness' refusal to talk to counsel is good reason for ordering a deposition. *James v. State*, 563 S.W.2d 599, 602 (Tex.Crim.App. [Panel Op.] 1978); *Martinez v. State*, 507 S.W.2d 223, 226 (Tex.Crim.App.1974); *Gentry v. State*, 494 S.W.2d 169, 172 (Tex.Crim.App.1973). We infer from these cases, and from *Janecka*, that the refusal of a witness who possesses information critical to a significant factor at trial, or who has information exclusively within that witness' knowledge, to talk to the defendant's counsel (or investigator) constitutes good reason for ordering such witness' deposition under Article 39.02.[3]

Although Randall established good reason for taking Annie's deposition, this does not end our inquiry. For an appellate court to hold that the trial court abused its discretion in declining to permit depositions to be taken, there must be a showing the defendant was harmed by such action. *James v. State*, 546 S.W.2d 306, 309 (Tex. Crim.App.1977).

The Texas Court of Criminal Appeals has held there is not an abuse of discretion in the denying of a motion to take a deposition where the witness testifies at trial, is subject to cross-examination by the defense, and the defendant does not otherwise show he or she was harmed by the trial court's action. *See Cooks v. State*, 844 S.W.2d 697, 729 (Tex.Crim.App.1992); *McKinney v. State*, 491 S.W.2d 404, 406– 07 (Tex.Crim.App.1973); *Beshears v. State*,

---

3. In *Cruz v. State*, 737 S.W.2d 74, 76 (Tex. App.-San Antonio 1987, no pet.), the court found that refusal to allow the defendant's counsel to communicate with the victim was not sufficient to establish good reason under TEX.CODE CRIM. PROC. ANN. art. 39.02 (Vernon 1979). However, counsel's unsworn statement is all that was presented at the hearing on Cruz' application to take the victim's deposition, and the San Antonio court correctly pointed out that such was not evidence. *Id.* The court also quotes from Judge Onion's

commentary to Article 39.02 wherein he expresses concern that the deposition practice by the defendant might be abused, "particularly in sex offenses where the complaining witness is of tender age." *Id.* at 75–76. We believe, however, that the safeguards provided by TEX.CODE CRIM. PROC. ANN. art. 38.071 (Vernon Supp.2004) for taking the testimony of a child witness outside the courtroom may be applied, under the trial court's broad discretion, to depositions of children ordered pursuant to Article 39.02.

461 S.W.2d 122, 125–26 (Tex.Crim.App. 1970).

Although Randall made the conclusory assertion that, without the depositions, his attorney would be unable to adequately prepare for trial, he has not shown how he was harmed by the court's denial of his motion. He pled guilty. The facts surrounding the incident were all within his knowledge, and he was at all times available to aid defense counsel in preparing the case. Further, Annie testified at trial and was subject to extensive cross-examination. For these reasons, and because Randall has not otherwise shown how he was harmed, we hold the trial court did not abuse its discretion in denying his motion.

## IV. *Ineffective Assistance of Counsel*

█ Randall contends his trial counsel's assistance fell below an objective standard of reasonableness by failing to adequately inform and counsel him on the ramifications of his guilty plea. Randall contends he did not wish to plead guilty, but was confused and pressured into entering his plea.

█ When a defendant enters his or her plea on the advice of counsel and subsequently challenges the voluntariness of that plea based on ineffective assistance of counsel, the voluntariness of such plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases, and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he or she would not have pled guilty. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining whether a plea was knowingly and voluntarily entered, we examine the record as a whole. *See Martinez v. State,* 981 S.W.2d 195, 197 (Tex.Crim.App.1998). If an attor-

ney conveys erroneous information to his or her client, and the client enters a plea of guilty based on that misinformation, the plea is involuntary. *See Fimberg v. State,* 922 S.W.2d 205, 207 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd). We do not necessarily attribute the length of sentence to unprofessional or incompetent trial counsel. *See Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002).

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the appellant's defense. *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Rosales v. State,* 4 S.W.3d 228, 231 (Tex.Crim.App.1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

We must begin with the strong presumption that counsel was competent. *See Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State,* 877

S.W.2d 768, 771 (Tex.Crim.App.1994). An appellant has the burden of rebutting this presumption by presenting evidence that trial counsel's conduct fell outside the range of reasonable professional assistance. *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001). An appellant cannot meet this burden if the record does not show the reasons for the conduct of trial counsel. *Kegler v. State,* 16 S.W.3d 908, 911–12 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). This kind of record is best developed in a hearing on an application for writ of habeas corpus or a motion for new trial. *Id.* at 912. When the record is silent regarding the reasons for counsel's conduct, finding counsel ineffective would cause the court to engage in mere speculation. *Id.*

Randall has presented no evidence that his attorney's actions misled him or prevented him from making a voluntary and informed decision to enter his plea of guilty. In his motion for new trial, Randall asserted that his counsel pressured and coerced him into entering a plea of guilty, that he did not understand the ramifications of his plea, and that he did not understand the agreement his attorney entered into with the State in exchange for his plea. Randall believed the agreement "had something to do with dropping an enhancement and a 'safe place' instruction," but he did not fully understand the agreement. Randall, however, does not contend how his counsel's advice was erroneous, how it misled him into entering a plea of guilty, of what ramifications his counsel failed to inform him, or what he did not understand about the plea agreement his counsel negotiated. No evidence of what Randall's counsel told him or of any pressure or coercion brought to bear on him is shown by the evidence. The evidence fails to show what the plea agreement was. Nothing in the record shows that Randall would not have pled guilty but for his trial counsel's alleged errors or omissions. The record is silent regarding the reasons for counsel's conduct, and finding counsel ineffective would cause this Court to engage in mere speculation. Based on this record, we cannot conclude Randall met his burden of proving that his plea was made as a result of ineffective assistance 'of counsel. *See Thompson,* 9 S.W.3d at 814.

## V. *Hearing on Motion for New Trial*

▮▮▮ Randall contends the trial court erred by not holding a hearing on his motion for new trial to consider his claim of ineffective assistance of counsel. Randall cites the deference to trial counsel's strategy and the need for ineffective assistance of counsel to be firmly grounded in the record. He contends the trial court denied him the opportunity for meaningful appellate review on his claim for ineffective assistance of counsel by not holding such a hearing.

Randall's motion contended his plea of guilty was not voluntarily entered because of the ineffectiveness of his counsel. He requested a hearing, and he attached a "verification" to his motion for new trial, which stated that "the statements made in the foregoing Motion for New Trial are true and correct." The "verification" was signed by Randall. What Randall did not do, however, was present the motion to the trial court as required by TEX.R.APP. P. 21.6.

▮▮▮ In some instances, a trial court abuses its discretion when it does not conduct a hearing on a defendant's motion for new trial that raises matters not discernible from the record. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim.App.1993); *Landers v. State,* 110 S.W.3d 617, 626 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). Nonetheless, the mere filing of a

motion for new trial is insufficient to show "presentment" of the motion, as required under the Texas Rules of Appellate Procedure. *Carranza v. State,* 960 S.W.2d 76, 78 (Tex.Crim.App.1998); *see* TEX.R.APP. P. 21.6. As defined by the Texas Court of Criminal Appeals, "presentment," as Rule 21.6 uses that term, requires the trial court be placed on actual notice the movant desires a hearing or a ruling on the motion for new trial. *Carranza,* 960 S.W.2d at 78 (interpreting former Rule 31(e)(3) of the Texas Rules of Appellate Procedure). Typically, the movant will satisfy the presentment requirement when the record on appeal shows the movant actually delivered the motion to the trial court or otherwise brought the motion to the trial court's attention. *Id.* at 79. Notice might be "evidenced by the judge's signature or notation on a proposed order or by a hearing date set on the docket." *Id.* at 81 (Overstreet, J., concurring).

In this case, there is nothing in the record to show Randall presented his motion for new trial to the trial court. There is no order by the trial court contained in the appellate record denying Randall's motion for new trial. There is also no date set for a hearing on the docket sheet or a notation or signature by the judge on a proposed order. In short, there is nothing in the record to indicate Randall presented the motion to the trial court or otherwise put the court on actual notice that he desired a hearing or a ruling. He therefore has not satisfied his burden under TEX.R.APP. P. 21.6.

### VI. *Conclusion*

We affirm the judgment of the trial court.

Concurring Opinion by Justice CARTER.

Justice CARTER concurring.

A trial court abuses its discretion in denying a defense motion to depose a witness in a criminal case if a good reason is shown for taking the deposition and the failure to allow it causes harm to the defendant. Morrow has not shown this. He pled guilty, and the trial concerned punishment only. He did not allege or demonstrate any surprise. A statement of the witness was used by the defense in cross-examining the witness. Clearly, the trial court did not abuse its discretion in denying the motion to depose the witness. I agree with the conclusion in the majority opinion. These comments address the discretion of a trial court in determining whether to order depositions in a criminal case.

It is my view that the cases cited by the majority do not clearly suggest that the refusal of a witness to discuss facts surrounding the charge with the defense constitutes good cause to order a witness' deposition without other circumstances. In *James,* the court held that good cause did not exist even though there was no examining trial, police officers refused to talk to the appellant's investigator, and other circumstances. *James v. State,* 563 S.W.2d 599, 602 (Tex.Crim.App. [Panel Op.] 1978). The court did note that there was no showing that three other witnesses refused to talk with the appellant. *Id.* In *Martinez,* the court found that, because no facts were stated showing a good reason for the deposition, no affidavit was attached to the motion, and there was no showing that the witness refused to discuss the case with the appellant, there was no abuse of discretion in denying the motion for deposition. *Martinez v. State,* 507 S.W.2d 223, 226 (Tex.Crim.App.1974). In *Gentry,* the court observed the case had been continued eight times since the filing of the motion for deposition and held the

trial court did not abuse its discretion in denying the motion presented on the day of trial, which motion did not allege that the State's witnesses refused to discuss the case with the appellant's counsel. *Gentry v. State,* 494 S.W.2d 169, 172 (Tex.Crim. App.1973). At most, the cases cited by the majority indicate that refusal of a witness to discuss the case with the defense is an important factor in determining whether a good reason exists to depose the witness.

Although the refusal of a witness to discuss the case with the appellant is an important factor, such refusal is not the only factor which should be considered. A trial court has broad discretion in granting or denying a motion to take a deposition. *Janecka v. State,* 937 S.W.2d 456, 469 (Tex. Crim.App.1996); *see M.B. v. State,* 901 S.W.2d 620, 623 (Tex.App.-San Antonio 1995, no pet.). A mere allegation that refusal of a witness to discuss the case is anticipated is not sufficient. *Cooks v. State,* 844 S.W.2d 697, 729 (Tex.Crim.App. 1992). In *May v. State,* the Texas Court of Criminal Appeals held that the trial court did not abuse its discretion when the statements of witnesses were produced, the appellant conducted an extensive voir dire examination, and the witnesses were cross-examined. 738 S.W.2d 261, 273 (Tex.Crim.App.1987). As stated in the majority opinion, the defendant must establish that the witness possessed information critical to any significant factor at trial, or that the witness had any information exclusively within his or her knowledge. *Janecka,* 937 S.W.2d at 469–70. There are many factors which a court should consider when deciding whether to grant a motion to take a deposition of a witness. The Texas Court of Criminal Appeals has held that no abuse of discretion occurs if the witness was thoroughly cross-examined and the defendant failed to show that the denial resulted in harm even though a witness had declined to discuss

the alleged assault with defense counsel. *McKinney v. State,* 491 S.W.2d 404, 406–07 (Tex.Crim.App.1973).

The statement in the majority opinion that Morrow established good reason to take the deposition because the witness would not talk with defendant's counsel (or investigator) could result in unintended consequences.

What is the trial court to do when faced with evidence that a witness will not talk to the defense? One could read the majority opinion to require the trial court to order the deposition on evidence only that the witness refused to talk to the defense. The reasoning is that, since the trial court must make this decision before trial, it could not determine in advance whether the refusal to order the deposition would result in harm to the defendant. To avoid the possibility that it might be harmful, the trial court would be required to order the deposition in each instance when the witness fails to talk to the defense. This would be an improper conclusion. Trial courts must be granted the discretion to exercise a reasoned judgment. If the trial court concludes that the deposition is necessary to obtain critical evidence for the defendant to be able to confront the accusations and that failure to allow it will harm the accused, the trial court has the discretion to and should order a deposition. However, if the trial court finds that the defendant's rights will be properly protected by the production of witness statements, pretrial hearings, cross-examination, production of records, or other discovery procedures or measures, the trial court has the discretion to deny the motion.

I concur in the decision to affirm the trial court's judgment.