In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00189-CR
______________________________


RANDALL KEITH MORROW, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 03-0044X


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross
Concurring Opinion by Justice Carter


O P I N I O N

          Randall Keith Morrow pled guilty to aggravated kidnapping.


 The jury found him
guilty as instructed and assessed his punishment at forty years' imprisonment. He
appeals,


 contending the trial court erred by (1) denying his motion to suppress an in-court
identification; (2) denying his motion to take depositions; and (3) denying a hearing on his
motion for new trial. Randall also contends his trial counsel rendered ineffective
assistance. 
I. Factual Background
          Annie Morrow testified she and Randall were married in October 2002, after a brief
courtship. The marriage was rocky from the start, and the two separated in December
2002. On the morning of January 28, 2003, Randall went to Marshall, where Annie was
living. Annie telephoned the police, and Randall left. Undeterred, he returned at 3:00 a.m.
and told Annie her eldest son was ill in the hospital. Annie rushed to the hospital, but her
son was not there. Randall admitted his lie, telling Annie he wanted to get her out of the
house so they could talk. Randall convinced Annie to talk in his vehicle, out of the cold
weather. When she acquiesced, he sped off to his mother's house on the lake. There, he
accused Annie of cheating on him, and he beat and raped her. 
          The next day, Randall took Annie back to Marshall and allowed her to pick up some
clothes. He then took her back to his mother's property, where he assaulted her again, this
time stabbing her in the chest, puncturing her lung. He then locked her in the trunk of his
car and left the premises in that vehicle. Annie pulled wires and yelled for help. At one
point, the car stopped and she heard voices outside. She began beating on the inside of
the trunk and screaming, "Somebody help me. He's going to kill me." 
          Deborah Johnson testified she was at Hawk's Grocery Store when a man pulled up
in a tan Honda Accord. She heard a woman's voice coming from inside the trunk saying,
"Let me out. He's trying to kill me. Will you help me? Will somebody please help me?" 
She looked at the man driving the Honda, and he told her it was his sister who had run
away from home. Deborah went into the store and told the attendant to telephone the
police. The man got back in the car and sped off. The next day, Deborah identified
Randall from a photographic lineup as the man in the Honda. 
          Randall again took Annie back to his mother's house and told her to take a shower. 
Annie went into the bathroom and tried to shower. She heard the police outside and ran
out the back door. 
          Randall's account of the events, both in his statement to police and in his testimony
at trial, differed sharply from Annie's version. He testified Annie voluntarily went with him
to his mother's house, where they had consensual sex. Randall testified a fight did ensue
over money and over whether Annie was having an affair. They exchanged slaps and then
struggled over a knife that had fallen from Annie's purse. After the struggle, Randall
noticed Annie had blood on her shirt, but he did not believe it was anything serious. They
left together for Marshall, where she got some clothes to change into, and then went back
to his mother's property. Another argument ensued over whether Annie was having an
affair, and she picked up a stick and hit Randall on the wrist. He also picked up a stick and
hit her on the head. They left his mother's property with Annie in the passenger seat, and
while he was driving, Annie began kicking the dashboard and grabbing the steering wheel,
almost causing an accident. Randall told her he would put her in the trunk to prevent her
from doing that, so Annie got out of the car and got in the trunk. Randall slammed the
trunk lid on her. He proceeded to a store to get gas, and Annie began "hollering and
talking crazy" from the trunk. He left the store, went ten yards and got Annie out of the
trunk. They went back to his mother's house, where Annie went to the bathroom and he
walked down the street to his sister's house to cool off. He was at his sister's house for
fifteen to twenty minutes when he observed police vehicles going up and down the road. 
He left the area without being detected and was apprehended six days later. 
II. Propriety of Identification
          Randall contends Johnson's in-court identification of him was tainted by the
impermissibly suggestive photographic lineup she was shown before trial. The day after
Johnson observed the Honda at Hawk's Grocery, she went to the police station as
requested. Lieutenant Doyle Kuhn showed her a photographic array of six individuals and
asked if she saw the gentleman who was at Hawk's Grocery. Johnson immediately
identified Randall. Randall moved to suppress the identification and any in-court
identification Johnson would potentially make as being tainted by the impermissibly
suggestive photographic array. The trial court held a hearing on Randall's motion to
suppress and denied it by written order. 
          a. Findings of Fact and Conclusions of Law 
          Although expressing an intention at the pretrial hearing to make findings of fact and
conclusions of law, the trial court failed to do so. Randall contends this case should be
abated to allow the trial court to make those findings of fact and conclusions of law. 
          We previously abated this appeal for the trial court to make findings of fact and
conclusions of law concerning whether the statement Randall made to police was
voluntary, as required by Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (Vernon Supp. 2004). 
See Morrow v. State, No. 06-03-00189-CR (Tex. App.—Texarkana Feb. 24, 2004, order)
(not designated for publication). No comparable rule requires an abatement for findings
of fact and conclusions of law concerning the denial of a motion to suppress. While it is
better practice for such findings and conclusions to be made when a motion to suppress
has been denied, such is not required. See Jones v. State, 944 S.W.2d 50, 51 (Tex.
App.—Texarkana 1997, pet. ref'd). We therefore will consider Randall's contentions on the
suggestive nature of the pretrial photographic array from the record before us. Because
the trial court did not make express findings of historical fact, we view the facts in the light
most favorable to the trial court's ruling. See Wallace v. State, 75 S.W.3d 576, 584 (Tex.
App.—Texarkana 2002), aff'd, 106 S.W.3d 103 (Tex. Crim. App. 2003). 
          b. Suggestiveness of Photographic Array
          A pretrial identification procedure may be so suggestive and conducive to mistaken
identification that subsequent use of that identification at trial would deny the accused due
process of law. Simmons v. United States, 390 U.S. 377, 384 (1968); Barley v. State, 906
S.W.2d 27, 32–33 (Tex. Crim. App. 1995). We apply a two-step analysis to determine the
admissibility of an in-court identification and ask (1) whether the pretrial identification
procedure was impermissibly suggestive and, if so, (2) whether the improperly suggestive
procedure created a very substantial likelihood of irreparable misidentification. Simmons,
390 U.S. at 384; Barley, 906 S.W.2d at 33. A defendant bears the burden of establishing
by clear and convincing evidence that the pretrial identification procedure was
impermissibly suggestive. Barley, 906 S.W.2d at 33–34. The analysis requires an
examination of the totality of the circumstances surrounding the identification. Id. at 33.
          If a court finds that a pretrial identification procedure was impermissibly suggestive,
it must then consider the factors enumerated in Neil v. Biggers, 409 U.S. 188, 199 (1972),
to determine whether the suggestive procedure gave rise to a substantial likelihood of
irreparable misidentification. These nonexclusive factors are: (1) the witness' opportunity
to view the criminal; (2) the witness' degree of attention; (3) the accuracy of the witness'
description of the suspect; (4) the level of certainty at the time of confrontation; and (5) the
time between the crime and confrontation. Id. 
          We have reviewed the record, as well as the photographic array, and find nothing
impermissibly suggestive about either the array itself or the officer's use of the array in the
questioning of the witness. Kyle Ready, a detective, prepared the photographic array. He
further testified he tries to ensure that all the photographs used are as similar as possible. 
He testified he tries to use similar stature, size, race, skin tone, and hair design. The
photographic array in question consisted of a total of six photographs, three arranged in
a line above three others. Randall's photograph was in the center of the top line. All the
individuals in the photographic array, including Randall, were black males. They all had
short hair, close or similar skin tones, and all were face-forward photographs. Kuhn
showed Johnson the photographic lineup and explained to her she needed to determine
if she saw the person who was at Hawk's Grocery. Kuhn testified he did not tell Johnson
that Randall was in the photographic array, and he did not give her any indication of who
he believed the perpetrator to be. 
          Randall contends error was committed because the photographs on either side of
his appeared to be looking in his direction, and his head is the largest in the photographs. 
Nothing in the evidence shows—or even suggests—these differences were intentional or
made for the purpose of suggesting that Randall's photograph was the one the witness
should select. Although it may be possible to configure a particular photographic array in
a manner to suggest the desired identification, we do not find that the lineup of the array
in this case was impermissibly suggestive.  
          Even assuming the photographic array could be considered suggestive, we cannot
find from the record that it gave rise to a substantial likelihood of misidentification. Johnson
had ample opportunity to view Randall at the grocery store. She observed him in broad
daylight, she looked directly at him, and she had a conversation with him. Her degree of
attention was certainly heightened when a man with a screaming woman in his trunk
arrived at the store. This is evidenced by her telling the attendant to call the police. There
was no testimony as to how close Johnson was to Randall, but she immediately identified
him and was quite positive. Further, there was little time lapse from the crime to the
confrontation, as Johnson identified Randall the day after the incident occurred. Johnson
also testified that the arrangement of the two photographs on either side of Randall's
photograph, so that they appeared to be looking at Randall, did not influence her decision
to identify him. She testified the police did not do anything to suggest Randall's
photograph was the correct choice. Given the totality of the circumstances, we find no
evidence that the in-court identification of Randall was tainted by an impermissibly
suggestive pretrial identification.
III. Motion to Depose
          Randall contends the trial court erred in denying his motion to take the depositions
of Annie and the investigating officers. He contended in his motion and accompanying
affidavit that Annie refused to talk to his investigator and that the investigating officers were
instructed not to speak to defense counsel, except through the district attorney's office. 
Randall contended that, unless he was permitted to depose these witnesses, he would be
unable to effectively cross-examine them and prepare and present evidence to rebut their
statements. The trial court denied the motion by written order. 
          Article 39.02 of the Texas Code of Criminal Procedure governs depositions for a
defendant in a criminal case. 
          Depositions of witnesses may be taken by the defendant. When the
defendant desires to take the deposition of a witness, he shall, by himself or
counsel, file with the clerk of the court in which the case is pending an
affidavit stating the facts necessary to constitute a good reason for taking the
same, and an application to take the same. Provided that upon the filing of
such application, and after notice to the attorney for the state, the courts
shall hear the application and determine if good reason exists for taking the
deposition. Such determination shall be based on the facts made known at
the hearing and the court, in its judgment, shall grant or deny the application
on such facts.
 
Tex. Code Crim. Proc. Ann. art. 39.02 (Vernon 1979).
          This rule authorizes depositions of witnesses by a defendant when such defendant
files an application to take such depositions, accompanied by an affidavit stating facts
constituting good reason for taking such depositions, and then makes those facts known
to the court at a hearing. A trial court has broad discretion in ruling on an Article 39.02
motion and will be reversed only on an abuse of discretion. May v. State, 738 S.W.2d 261,
273 (Tex. Crim. App. 1987). The mere fact that a defendant seeks the deposition of an
adverse witness is not sufficient, standing alone, to show an abuse of discretion. Tucker
v. State, 461 S.W.2d 630, 634–35 (Tex. Crim. App. 1970). The defendant must show that
the witness sought to be deposed possesses information critical to a significant factor at
trial, or that such witness has information exclusively within that witness' knowledge. 
Janecka v. State, 937 S.W.2d 456, 469–70 (Tex. Crim. App. 1996). The court's
determination of a defendant's motion must be based on the facts made known at the
hearing. Cruz v. State, 737 S.W.2d 74, 76 (Tex. App.—San Antonio 1987, no pet.). 
          The only facts developed at the hearing on Randall's motion pertained to Annie's
refusal to talk to Randall's attorney or the investigator working on his behalf. Because no
facts were developed at that hearing concerning such refusal by the investigating officers,
any error in the trial court's denial of Randall's motion to take their depositions has not
been preserved. See id. 
          Randall established good reason, however, for taking Annie's deposition. As the
victim of the offense, she obviously possessed information critical to a significant factor at
trial. Further, the evidence at the pretrial hearing was undisputed that she refused to talk
to the investigator assisting Randall's counsel. The Texas Court of Criminal Appeals has
implied in three cases that a witness' refusal to talk to counsel is good reason for ordering
a deposition. James v. State, 563 S.W.2d 599, 602 (Tex. Crim. App. [Panel Op.] 1978);
Martinez v. State, 507 S.W.2d 223, 226 (Tex. Crim. App. 1974); Gentry v. State, 494
S.W.2d 169, 172 (Tex. Crim. App. 1973). We infer from these cases, and from Janecka,
that the refusal of a witness who possesses information critical to a significant factor at
trial, or who has information exclusively within that witness' knowledge, to talk to the
defendant's counsel (or investigator) constitutes good reason for ordering such witness'
deposition under Article 39.02.


 
          Although Randall established good reason for taking Annie's deposition, this does
not end our inquiry. For an appellate court to hold that the trial court abused its discretion
in declining to permit depositions to be taken, there must be a showing the defendant was
harmed by such action. James v. State, 546 S.W.2d 306, 309 (Tex. Crim. App. 1977). 
          The Texas Court of Criminal Appeals has held there is not an abuse of discretion
in the denying of a motion to take a deposition where the witness testifies at trial, is subject
to cross-examination by the defense, and the defendant does not otherwise show he or
she was harmed by the trial court's action. See Cooks v. State, 844 S.W.2d 697, 729 (Tex.
Crim. App. 1992); McKinney v. State, 491 S.W.2d 404, 406–07 (Tex. Crim. App. 1973);
Beshears v. State, 461 S.W.2d 122, 125–26 (Tex. Crim. App. 1970).
          Although Randall made the conclusory assertion that, without the depositions, his
attorney would be unable to adequately prepare for trial, he has not shown how he was
harmed by the court's denial of his motion. He pled guilty. The facts surrounding the
incident were all within his knowledge, and he was at all times available to aid defense
counsel in preparing the case. Further, Annie testified at trial and was subject to extensive
cross-examination. For these reasons, and because Randall has not otherwise shown how
he was harmed, we hold the trial court did not abuse its discretion in denying his motion. 
IV. Ineffective Assistance of Counsel
          Randall contends his trial counsel's assistance fell below an objective standard of
reasonableness by failing to adequately inform and counsel him on the ramifications of his
guilty plea. Randall contends he did not wish to plead guilty, but was confused and
pressured into entering his plea. 
          When a defendant enters his or her plea on the advice of counsel and subsequently
challenges the voluntariness of that plea based on ineffective assistance of counsel, the
voluntariness of such plea depends on (1) whether counsel's advice was within the range
of competence demanded of attorneys in criminal cases, and if not, (2) whether there is
a reasonable probability that, but for counsel's errors, he or she would not have pled guilty. 
Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984). In
determining whether a plea was knowingly and voluntarily entered, we examine the record
as a whole. See Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). If an
attorney conveys erroneous information to his or her client, and the client enters a plea of
guilty based on that misinformation, the plea is involuntary. See Fimberg v. State, 922
S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). We do not necessarily
attribute the length of sentence to unprofessional or incompetent trial counsel. See Bone
v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).
          The standard of testing claims of ineffective assistance of counsel is set out in
Strickland, 466 U.S. 668, and adopted for Texas constitutional claims in Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on this claim, an appellant
must prove by a preponderance of the evidence (1) that counsel's representation fell below
an objective standard of reasonableness, and (2) that the deficient performance prejudiced
the appellant's defense. Strickland, 466 U.S. 668; Rosales v. State, 4 S.W.3d 228, 231
(Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's
representation fell below the standard of prevailing professional norms and that there is a
reasonable probability that, but for the attorney's deficiency, the result of the trial would
have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under
this standard, a claimant must prove that counsel's representation so undermined the
proper functioning of the adversarial process that the trial cannot be relied on as having
produced a just result. Strickland, 466 U.S. at 686. 
          We must begin with the strong presumption that counsel was competent. See
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's
actions and decisions were reasonably professional and were motivated by sound trial
strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). An appellant
has the burden of rebutting this presumption by presenting evidence that trial counsel's
conduct fell outside the range of reasonable professional assistance. Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001). An appellant cannot meet this burden if the
record does not show the reasons for the conduct of trial counsel. Kegler v. State, 16
S.W.3d 908, 911–12 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). This kind of record
is best developed in a hearing on an application for writ of habeas corpus or a motion for
new trial. Id. at 912. When the record is silent regarding the reasons for counsel's
conduct, finding counsel ineffective would cause the court to engage in mere speculation. 
Id.
          Randall has presented no evidence that his attorney's actions misled him or
prevented him from making a voluntary and informed decision to enter his plea of guilty. 
In his motion for new trial, Randall asserted that his counsel pressured and coerced him
into entering a plea of guilty, that he did not understand the ramifications of his plea, and
that he did not understand the agreement his attorney entered into with the State in
exchange for his plea. Randall believed the agreement "had something to do with
dropping an enhancement and a 'safe place' instruction," but he did not fully understand
the agreement. Randall, however, does not contend how his counsel's advice was
erroneous, how it misled him into entering a plea of guilty, of what ramifications his counsel
failed to inform him, or what he did not understand about the plea agreement his counsel
negotiated. No evidence of what Randall's counsel told him or of any pressure or coercion
brought to bear on him is shown by the evidence. The evidence fails to show what the plea
agreement was. Nothing in the record shows that Randall would not have pled guilty but
for his trial counsel's alleged errors or omissions. The record is silent regarding the
reasons for counsel's conduct, and finding counsel ineffective would cause this Court to
engage in mere speculation. Based on this record, we cannot conclude Randall met his
burden of proving that his plea was made as a result of ineffective assistance of counsel. 
See Thompson, 9 S.W.3d at 814.
V. Hearing on Motion for New Trial
          Randall contends the trial court erred by not holding a hearing on his motion for new
trial to consider his claim of ineffective assistance of counsel. Randall cites the deference
to trial counsel's strategy and the need for ineffective assistance of counsel to be firmly
grounded in the record. He contends the trial court denied him the opportunity for
meaningful appellate review on his claim for ineffective assistance of counsel by not
holding such a hearing. 
          Randall's motion contended his plea of guilty was not voluntarily entered because
of the ineffectiveness of his counsel. He requested a hearing, and he attached a
"verification" to his motion for new trial, which stated that "the statements made in the
foregoing Motion for New Trial are true and correct." The "verification" was signed by
Randall. What Randall did not do, however, was present the motion to the trial court as
required by Tex. R. App. P. 21.6. 
          In some instances, a trial court abuses its discretion when it does not conduct a
hearing on a defendant's motion for new trial that raises matters not discernible from the
record. Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); Landers v. State,
110 S.W.3d 617, 626 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Nonetheless, the
mere filing of a motion for new trial is insufficient to show "presentment" of the motion, as
required under the Texas Rules of Appellate Procedure. Carranza v. State, 960 S.W.2d
76, 78 (Tex. Crim. App. 1998); see Tex. R. App. P. 21.6. As defined by the Texas Court
of Criminal Appeals, "presentment," as Rule 21.6 uses that term, requires the trial court be
placed on actual notice the movant desires a hearing or a ruling on the motion for new trial. 
Carranza, 960 S.W.2d at 78 (interpreting former Rule 31(e)(3) of the Texas Rules of
Appellate Procedure). Typically, the movant will satisfy the presentment requirement when
the record on appeal shows the movant actually delivered the motion to the trial court or
otherwise brought the motion to the trial court's attention. Id. at 79. Notice might be
"evidenced by the judge's signature or notation on a proposed order or by a hearing date
set on the docket." Id. at 81 (Overstreet, J., concurring).
          In this case, there is nothing in the record to show Randall presented his motion for
new trial to the trial court. There is no order by the trial court contained in the appellate
record denying Randall's motion for new trial. There is also no date set for a hearing on
the docket sheet or a notation or signature by the judge on a proposed order. In short,
there is nothing in the record to indicate Randall presented the motion to the trial court or
otherwise put the court on actual notice that he desired a hearing or a ruling. He therefore
has not satisfied his burden under Tex. R. App. P. 21.6.
 

VI.      Conclusion
          We affirm the judgment of the trial court. 
                                                                
 
                                                                           Donald R. Ross
                                                                          Justice




CONCURRING OPINION

          A trial court abuses its discretion in denying a defense motion to depose a witness
in a criminal case if a good reason is shown for taking the deposition and the failure to
allow it causes harm to the defendant. Morrow has not shown this. He pled guilty, and the
trial concerned punishment only. He did not allege or demonstrate any surprise. A
statement of the witness was used by the defense in cross-examining the witness. Clearly,
the trial court did not abuse its discretion in denying the motion to depose the witness. I
agree with the conclusion in the majority opinion. These comments address the discretion
of a trial court in determining whether to order depositions in a criminal case.
          It is my view that the cases cited by the majority do not clearly suggest that the
refusal of a witness to discuss facts surrounding the charge with the defense constitutes
good cause to order a witness' deposition without other circumstances. In James, the court
held that good cause did not exist even though there was no examining trial, police officers
refused to talk to the appellant's investigator, and other circumstances. James v. State,
563 S.W.2d 599, 602 (Tex. Crim. App. [Panel Op.] 1978). The court did note that there
was no showing that three other witnesses refused to talk with the appellant. Id. In
Martinez, the court found that, because no facts were stated showing a good reason for
the deposition, no affidavit was attached to the motion, and there was no showing that the
witness refused to discuss the case with the appellant, there was no abuse of discretion
in denying the motion for deposition. Martinez v. State, 507 S.W.2d 223, 226 (Tex. Crim.
App. 1974). In Gentry, the court observed the case had been continued eight times since
the filing of the motion for deposition and held the trial court did not abuse its discretion in
denying the motion presented on the day of trial, which motion did not allege that the
State's witnesses refused to discuss the case with the appellant's counsel. Gentry v. State,
494 S.W.2d 169, 172 (Tex. Crim. App. 1973). At most, the cases cited by the majority
indicate that refusal of a witness to discuss the case with the defense is an important factor
in determining whether a good reason exists to depose the witness.
          Although the refusal of a witness to discuss the case with the appellant is an
important factor, such refusal is not the only factor which should be considered. A trial
court has broad discretion in granting or denying a motion to take a deposition. Janecka
v. State, 937 S.W.2d 456, 469 (Tex. Crim. App. 1996); see M.B. v. State, 901 S.W.2d 620,
623 (Tex. App.—San Antonio 1995, no pet.). A mere allegation that refusal of a witness
to discuss the case is anticipated is not sufficient. Cooks v. State, 844 S.W.2d 697, 729
(Tex. Crim. App. 1992). In May v. State, the Texas Court of Criminal Appeals held that the
trial court did not abuse its discretion when the statements of witnesses were produced,
the appellant conducted an extensive voir dire examination, and the witnesses were
cross-examined. 738 S.W.2d 261, 273 (Tex. Crim. App. 1987). As stated in the majority
opinion, the defendant must establish that the witness possessed information critical to any
significant factor at trial, or that the witness had any information exclusively within his or
her knowledge. Janecka, 937 S.W.2d at 469–70. There are many factors which a court
should consider when deciding whether to grant a motion to take a deposition of a witness. 
The Texas Court of Criminal Appeals has held that no abuse of discretion occurs if the
witness was thoroughly cross-examined and the defendant failed to show that the denial
resulted in harm even though a witness had declined to discuss the alleged assault with
defense counsel. McKinney v. State, 491 S.W.2d 404, 406–07 (Tex. Crim. App. 1973).
          The statement in the majority opinion that Morrow established good reason to take
the deposition because the witness would not talk with defendant's counsel (or investigator)
could result in unintended consequences. 
          What is the trial court to do when faced with evidence that a witness will not talk to
the defense? One could read the majority opinion to require the trial court to order the
deposition on evidence only that the witness refused to talk to the defense. The reasoning
is that, since the trial court must make this decision before trial, it could not determine in
advance whether the refusal to order the deposition would result in harm to the defendant. 
To avoid the possibility that it might be harmful, the trial court would be required to order
the deposition in each instance when the witness fails to talk to the defense. This would
be an improper conclusion. Trial courts must be granted the discretion to exercise a
reasoned judgment. If the trial court concludes that the deposition is necessary to obtain
critical evidence for the defendant to be able to confront the accusations and that failure
to allow it will harm the accused, the trial court has the discretion to and should order a
deposition. However, if the trial court finds that the defendant's rights will be properly
protected by the production of witness statements, pretrial hearings, cross-examination,
production of records, or other discovery procedures or measures, the trial court has the
discretion to deny the motion.
          I concur in the decision to affirm the trial court's judgment. 
 
                                                                           Jack Carter
                                                                           Justice


Date Submitted:      May 11, 2004
Date Decided:         June 30, 2004

Publish