NUMBER 13-07-00461-CR


 

COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


COSME SANCHEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 107th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Benavides


Memorandum Opinion by Justice Benavides



 On June 25, 2007, following a jury trial, Cosme Sanchez, appellant, was found guilty
of three counts of aggravated assault. See Tex. Penal Code Ann. §§ 22.01, 22.02 (Vernon
Supp. 2008). The trial court sentenced Sanchez to thirty-five years' confinement in the
Institutional Division of the Texas Department of Criminal Justice. Sanchez raises two
issues on appeal. (1) We affirm.

I. Background

 On June 19, 2006, Leonicio Ornelas and Ezequiel Lucio were drinking beer outside
of the home Ornelas shared with his wife, Maribel de la Cruz, and their children. Shortly
before midnight, while de la Cruz was preparing a meal inside the house, men appeared
at the gate surrounding Ornelas's property. (2) Lucio recognized one of the men as a person
he knew as "Cosme." As Ornelas was opening the gate for the men, they pushed past him
and began beating him and Lucio. De la Cruz picked up her phone and began calling the
police. The men carried firearms. One man demanded from Ornelas "everything he had"
and began hitting Ornelas. Ornelas fell into an outdoor sink, and the men continued hitting
him.

 Shortly after entering the yard and attacking Ornelas and Lucio, the men entered
the house and encountered de la Cruz and her young son. De la Cruz was still attempting
to call the police, and one of the men slapped the phone out of her hand. The men
insulted de la Cruz and began demanding drugs and money. She did not have any drugs,
but she did give the men forty dollars. The entire time this exchange occurred, the men
were aiming guns at de la Cruz. The men then pushed de la Cruz onto the bed and
continued aiming their guns at her and her son. One man grabbed her son near the throat,
aimed his gun at him, and said he was "going to kill the bastard." The man aiming the gun
at de la Cruz told her not to look at them so she would not be able to recognize them, and
warned her that if she did recognize them, she would be "worth shit." She believed that
meant the men were going to kill her. Later, de la Cruz identified Sanchez in a photo
lineup as one of the attackers.

 On December 4, 2006, Sanchez was indicted on three counts of aggravated assault. 
See id. §§ 22.01, 22.02. On May 16, 2007, a jury found Sanchez guilty on all three counts,
and on June 21, 2007, the trial court imposed a sentence of thirty-five years' confinement
in the Institutional Division of the Texas Department of Criminal Justice. This appeal
ensued. II. Legal Sufficiency

 In his first issue, Sanchez argues that the evidence was legally insufficient to sustain
his conviction on Counts I and II as charged in the indictment. 

A. Standard of Review and Applicable Law

 When an appellate court conducts a legal sufficiency review, we view the evidence
in the light most favorable to the prosecution to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. See
Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). The trier of fact is the sole judge of the credibility of the
witnesses, the facts, and the weight given to testimony. See Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979); Jackson, 443 U.S. at 318-19; Beckham v. State, 29 S.W.3d 148,
151 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd). We consider whether the jury
reached a rational decision. Beckham, 29 S.W.3d at 151. We neither substitute our own
judgment for that of the trier of fact, nor reevaluate the weight and credibility of the
evidence, whether circumstantial or direct. Mosley v. State, 141 S.W.3d 816, 821 (Tex.
App.-Texarkana 2004, pet. ref'd); Beckham, 29 S.W.3d at 151. "[S]ufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case." Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997) (noting that a hypothetically correct jury charge is "one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily increase the
State's burden of proof or unnecessarily restrict the State's theories of liability, and
adequately describes the particular offense for which the defendant was tried").

 The penal code defines an "assault" as "intentionally or knowingly threaten[ing]
another with imminent bodily injury . . . ." Tex. Penal Code Ann. § 22.01(a)(2). An assault
becomes an "aggravated assault" when a person "uses or exhibits a deadly weapon during
the commission of the assault . . . ." Id. § 22.02(a)(2).

B. Fatal Variance

 Sanchez argues that, because the indictment charged Sanchez with "intentionally
or knowingly threaten[ing] . . . with imminent bodily injury by threatening to kill . . . ," the
State was required to prove that Sanchez threatened to kill both de la Cruz and Ornelas. 
(emphasis in original). See Wray v. State, 711 S.W.2d 631, 633-34 (Tex. Crim. App. 1986)
(noting that "where the unnecessary matter is descriptive of that which is legally essential
to charge a crime, it must be proven as alleged even though needlessly stated"); Borrego
v. State, 800 S.W.2d 373, 376 (Tex. App.-Corpus Christi 1990, writ ref'd). Sanchez
asserts that the State must prove that he threatened to kill de la Cruz and Ornelas because
the "threatening to kill" language is "descriptive of that which is legally essential to charge
a crime." See Wray, 711 S.W.2d at 633-34. Sanchez claims the language is not mere
surplusage because it is descriptive of the offense charged. See Curry v. State, 30 S.W.3d
394, 399 (Tex. Crim. App. 2000) (explaining that "extra language is 'descriptive' of an
element of the offense if it 'define[s] the offense more narrowly, place[s] it in a specific
setting, or describe[s] the method by which it was committed.'") (quoting Upchurch v. State,
703 S.W.2d 638, 641 (Tex.Crim.App.1985)).

 In Gollihar v. State, the Texas Court of Criminal Appeals expressly overruled the
surplusage doctrine, which stated that an allegation in the charging instrument could be
disregarded when (1) it was not an essential element of the offense charged; (2) it could
be omitted without affecting the charge against the defendant; and (3) it could be omitted
without detriment to the indictment. 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). The
court also overruled the exception to the surplusage rule that Sanchez appears to rely on
in the present case. Id. at 250, 257. The exception provided "that where an extra or
unnecessary allegation 'is descriptive of that which is legally essential to charge a crime,
the State must prove it as alleged though needlessly pleaded.'" Id. at 250 (quoting Eastep
v. State, 941 S.W.2d 130, 134 n.7 (Tex. Crim. App. 1997) (holding that a fatal variance is
a variance between the indictment and the evidence presented at trial that is material and
affects the defendant's rights)). In so ruling, the court reaffirmed the fatal variance
doctrine, which directly applies to this case. Id. at 257; see Auldridge v. State, 228 S.W.3d
258, 261 (Tex. App.-Fort Worth 2007, pet ref'd) (stating that "Texas law no longer speaks
in terms of surplusage" when conducting legal sufficiency reviews). 

 "[W]hen faced with a sufficiency of the evidence claim based on a variance between
the indictment and the proof, only a 'material' variance will render the evidence insufficient." 
Gollihar, 46 S.W.3d at 257. A variance between the wording of the charging instrument
and the evidence actually presented at trial is fatal when it is material and prejudices the
defendant's substantial rights. Id. (citing U.S. v. Sprick, 233 F.3d 845, 853 ( 5th Cir.
2000)). To determine whether the variance is fatal, we must (1) determine whether the
indictment as written sufficiently informed the defendant of the charges against him so that
he could prepare an adequate defense, and (2) determine whether being prosecuted under
the deficient charging instrument would subject the defendant to being prosecuted for the
same crime at a later time. Id.

 In the present case, the indictment informed Sanchez that he was charged with
"intentionally or knowingly threaten[ing] . . . with imminent bodily injury by threatening to kill
. . . ," while using or exhibiting a firearm during the assault. To convict Sanchez of
aggravated assault under a hypothetically correct jury charge, the State was required to
prove that Sanchez (1) intentionally or knowingly; (2) threatened another with imminent
bodily injury; (3) while using or exhibiting a deadly weapon during the assault. See Tex.
Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2). A threat to kill is not a statutory element of
an aggravated assault. Id. §§ 22.01(a)(2), 22.02(a)(2); see Gollihar, 46 S.W.3d at 254
(noting that a hypothetically correct jury charge comprises the statutory elements of the
offense as modified by the charging instrument). Thus, even if Sanchez is correct that the
State failed to prove that he threatened to kill Ornelas and de la Cruz, we conclude that the
State was not required to prove that Sanchez made a specific threat to kill. 

 To convict Sanchez, if the "threatening to kill" language were omitted from the
indictment, the State would still have to prove the elements included in the hypothetically
correct jury charge. The indictment informed Sanchez that he was charged with
intentionally or knowingly threatening imminent bodily harm to Ornelas, de la Cruz, and
their son. The indictment also indicated that, while threatening imminent bodily harm to
the aforementioned persons, Sanchez used or exhibited a deadly weapon, a firearm. The
indictment provided the requisite notice to Sanchez. See generally Santana v. State, 59
S.W.3d 187, 195-96 (Tex. Crim. App. 2001). Additionally, Sanchez's prosecution under
this indictment does not subject him to a second prosecution for the aggravated assault
of de la Cruz or Ornelas. See generally id. We hold that the addition of the "threatening
to kill" language was an immaterial variance and should not be included in the
hypothetically correct jury charge in our legal sufficiency review. See Gollihar, 46 S.W.3d
at 258. 

C. Legal Sufficiency

 "To constitute an offense under section 22.01(a)(2), threats may be conveyed by
action or conduct as well as words." De Leon v. State, 865 S.W.2d 139, 142 (Tex.
App.-Corpus Christi 1993, no pet.) (citing McGowan v. State, 664 S.W.2d 355, 357 (Tex.
Crim. App. 1984)); see Tex. Penal Code Ann. § 22.01(a)(2). The act of pointing a gun at
another person may be sufficient conduct, which, by itself, can sustain a conviction for
aggravated assault. See Cantu v. State, 953 S.W.2d 772, 775 (Tex. App.-Corpus Christi
1997, pet. ref'd). 

 Ornelas and Lucio both testified that, when they were attacked, the attackers were
holding firearms. While testifying, Ornelas related, in Spanish, what the men said while
assaulting him. When asked what he understood the Spanish to mean, Ornelas stated,
"[w]ell, probably that he was going to kill me." (3)
 Ornelas also said that he feared for his life
and the lives of his family. Ornelas testified that, from the moment his attacker entered his
property, the attacker never stopped aiming a gun at him. In DeLeon v. State, this Court
held that brandishing a "'Rambo'-style" knife at another person was an aggravated assault,
even if the victim could not remember whether the attacker said anything to him. 865
S.W.2d 139, 141-42 (Tex. App.-Corpus Christi 1993, no pet.); see Gaston v. State, 672
S.W.2d 819, 822 (Tex. App.-Dallas 1983, no pet.) (holding that defendant committed an
aggravated assault by holding his hand over the mouth of the victim while also holding a
shotgun in his other hand which was in close proximity to the victim).

 De la Cruz testified that the attackers entered the house and began pointing guns
at her, which they kept aiming at her while they were in her house. The men also pushed
her down on her bed and continually insulted her. De la Cruz stated that, while the men
were in her house, demanding money and drugs, and pointing their guns at her and her
child, they told her to not look at them so that she could not recognize them. She testified
that they warned her that if she did recognize them, "she was going to be worth shit," which
she took to mean that "they were going to kill" her. Additionally, during her testimony, de
la Cruz's attorney asked whether the defendant "[i]s . . . the man who threatened to kill
you?" She answered, "Yes." 

 Sanchez argues that the penal code requires a threat of imminent bodily injury but
that, at best, the State only proved a conditional threat of future harm to de la Cruz. See
Tex. Penal Code Ann. § 22.01. But see Williams v. State, 194 S.W.3d 568, 574-75 (Tex.
App.-Houston [14th Dist.] 2006) (holding that, while a threat may be conditioned upon
future events, such threat may still be sufficiently imminent), aff'd, 252 S.W.3d 353 (Tex.
Crim. App. 2008). "However, conditioning a threat of harm on the occurrence of a future
event does not necessarily mean that the harmful consequences are not imminent." 
Williams, 194 S.W.3d at 575. To determine whether Sanchez threatened imminent harm,
"we must look to the proximity of the threatened harm to the condition" focusing on
"whether the victim was afraid of imminent serious bodily injury at the time of the offense." 
Id. Here, the condition was whether de la Cruz would recognize the men. Should she
recognize them, she believed they would kill her. De la Cruz testified that she was scared,
and she continually had a gun or guns pointed at her. The threat of harm was sufficiently
imminent as to not be overcome by the purported condition. Id.

 Viewing the evidence in the light most favorable to the verdict, we conclude that a
rational trier of fact could have found that Sanchez threatened imminent bodily harm to
both Ornelas and de la Cruz while using or exibiting a deadly weapon. See Tex. Penal
Code Ann. § 1.07(17)(A) (Vernon Supp. 2008) (defining "deadly weapon" to include a
firearm). Therefore, the evidence is legally sufficient, and Sanchez's first issue is
overruled.

IV. Right to Fair Indigent Representation

 In his second issue, Sanchez argues that his "right to fair indigent representation
was violated when appellant's defense counsel never visited him in jail to prepare for trial,"
in violation of code of criminal procedure article 1.051(a). See Tex. Code Crim. Proc. art.
1.051(a) (Vernon Supp. 2008). Sanchez asks this Court to follow a bright-line rule whereby
a counsel's failure to visit a defendant in jail prior to trial is a per se violation of article
1.051(a). See id.

 On July 20, 2007, Sanchez raised this issue in a motion for new trial. (4) See Tex. R.
App. P. 33.1(a)(1) (requiring that, to preserve error, a party must make a timely request,
objection or motion). In an August 2007 docket sheet entry, the trial court set a hearing
date on the motion. On September 4, 2007, because the trial court did not rule on the
motion within seventy-five days of imposing Sanchez's sentence on June 21, 2007, the
motion was deemed denied under rule 21.8. See Tex. R. App. P. 21.8; Stokes v. State,
277 S.W.3d 20, 21 (Tex. Crim. App. 2009) (noting that if the trial court does not rule on
the motion within seventy-five days of imposing sentence, the motion is deemed denied);
see also Galindo v. State, 2009 Tex. App. LEXIS 2807, at *8 (Tex. App.-Corpus Christi
2009, no pet. h.) (mem. op.). On September 6, 2007, however, during a hearing on the
motion for new trial, the trial judge orally denied the motion. The State argues that
Sanchez failed to properly present to the trial court his motion for new trial, thus failing to
preserve this issue for our review. See Tex. R. App. P. 21.6 ("The defendant must present
the motion for new trial to the trial court within 10 days of filing it, unless the trial court in
its discretion permits it to be presented and heard within 75 days from the date when the
court imposes or suspends sentence in open court."); id. § 33.1.

 "A defendant is required to 'present' a motion to the trial court within ten days of
filing it, unless the court, in its discretion, extends that time period." Stokes, 277 S.W.3d
at 21 (citing Tex. R. App. P. 21.6). "The purpose of the presentment rule is 'to put the trial
court on actual notice that a defendant desires the trial court to take some action on the
motion for new trial such as a ruling or a hearing on it.'" Id. (citing Carranza v. State, 960
S.W.2d 76, 78 (Tex. Crim. App.1998)). The movant has "the burden of actually delivering
the motion for new trial to the trial court or otherwise bringing the motion to the attention
or actual notice of the trial court." Carranza, 960 S.W.2d at 79. However, the movant must
do more than merely file the motion. Stokes, 277 S.W.3d at 21; see Cozzi v. State, 160
S.W.3d 638, 641 n. 5 (Tex. App.-Fort Worth 2005, pet. ref'd) (noting that a docket entry
stating "motion for new trial filed" was not sufficient to show presentment). Therefore, to
have preserved this issue, Sanchez must have presented his motion to the trial court within
ten days of filing it. (5) See Tex. R. App. P. 21.6; Stokes, 277 S.W.3d at 21.

 We find no record evidence indicating that Sanchez presented his motion for new
trial to the trial court within ten days of filing it. There is no docket entry during the requisite
time period indicating that a hearing on the motion was set. (6) See Morrow v. State, 139
S.W.3d 736, 746 (Tex. App.-Texarkana 2004, no pet.). The trial court did not make a
written ruling on the motion during the seventy-five day period. No hearing was held on the
motion within seventy-five days of the filing of the motion. Id. We hold that Sanchez has
failed to preserve this issue for our review. We overrule Sanchez's second issue.

V. Conclusion

 Having overruled Sanchez's issues, we affirm the judgment of the trial court.


 

 __________________________

 GINA M. BENAVIDES,

 Justice

Do not publish.

See Tex. R. App. P. 47.2(b)


Memorandum Opinion delivered and

filed this the 4th day of June, 2009.

 

1. In his brief to this Court, Sanchez argues that: (1) the evidence was legally insufficient to support
the verdict on Count II of the indictment, charging him with the aggravated assault of Leonicio Ornelas; (2)
the evidence was legally insufficient to support the verdict on Count I of the indictment, charging him with the
aggravated assault of Maribel De La Cruz; and (3) his right to fair indigent representation was violated. 
Because in his second issue, "[a]ppellant adopts the same arguments as noted in Issue #1, and argues that
the same standard of review applies[,]" we will consider issues one and two as one argument. 
2. Ornelas's and Ezequiel Lucio's testimony indicate that two men came through the gate, but de la
Cruz testified that there were either three or four men involved.
3. Sanchez asserts that because the statements made in Spanish to Ornelas were not translated, they
are not in the record. However, what Ornelas testified that he understood the Spanish to mean was before
the jury. Because the accuracy of Ornelas's translation is a question for the factfinder, Sanchez should have
sought to impeach the translation. See Garcia v. State, 887 S.W.2d 862, 875 (Tex. Crim. App. 1994),
overruled on other grounds, Hammock v. State, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001). Sanchez did
not do so.

4. No objection or request regarding this issue appears in the record prior to the motion for new trial. 
See Tex. R. App. P. 33.1(a)(1).
5. There is no indication in the record that the trial court extended the time period for Sanchez to
present his motion. See Stokes, 277 S.W.3d at 21.
6. On July 20, 2007, Sanchez filed the motion. On August 13, 2007, more than ten days after the filing
of the motion, a hearing on the motion was set.