Opinion filed April 30, 2014



In The

# Eleventh Court of Appeals

_____

## Nos. 11-12-00091-CR & 11-12-00092-CR

_____

## ERNESTO DUTCHOVER GARCIA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause Nos. 13055 & 13056**

### M E M O R A N D U M   O P I N I O N

The jury convicted Ernesto Dutchover Garcia in trial court cause no. 13055 of one count of indecency with a child by contact and one count of aggravated sexual assault of a child. The jury assessed his punishment at confinement for five years for the indecency conviction and for twenty years for the aggravated sexual assault conviction. In the same trial, the jury also convicted Appellant of one count of aggravated sexual assault of a child in trial court cause no. 13056. The

jury assessed his punishment at fifteen years for the aggravated sexual assault conviction in trial court cause no. 13056. The trial court ordered that the five-year and twenty-year sentences arising from trial court cause no. 13055 run concurrently. The trial court further ordered that Appellant's fifteen-year sentence arising from trial court cause no. 13056 run consecutively to the two sentences arising from trial court cause no. 13055.

Appellant challenges his two convictions arising from trial court cause no. 13055 in Cause No. 11-12-00091-CR, and he challenges his single conviction arising from trial court cause no. 13056 in Cause No. 11-12-00092-CR. He raises six issues in Cause No. 11-12-00091-CR and five issues in Cause No. 11-12-00092-CR. The first four issues in both appeals are identical and will be discussed together. The remaining two issues in Cause No. 11-12-00091-CR (Issues Nos. Five and Six) challenge the sufficiency of the evidence supporting the two convictions arising from trial court cause no. 13055. The fifth issue in Cause No. 11-12-00092-CR challenges the sufficiency of the evidence supporting the conviction arising from trial court cause no. 13056. We will address the sufficiency issues separately. We affirm.

*Background Facts*

The victims in this case were Appellant's step-granddaughters. The two older girls, D.R.M. and C.N.M., and their mother, Michelle, lived with Appellant and his wife Aurora for several years. Aurora worked from 2 p.m. until 10 p.m. four days a week and then was off for two days. Michelle and the girls eventually moved into a home nearby, and the two youngest children, A.H. and M.M., often stayed at Appellant's home on Aurora's days off. One Sunday afternoon, A.H. called Michelle crying and said that she wanted to come home and that her "butt" was hurting. Michelle asked whether she had fallen down, and A.H. said, "No, just come get me." Aurora testified that her granddaughter was always so happy but

2

that A.H. was different that day. When Aurora asked A.H. if she was in trouble with Appellant, A.H. said, "Yeah," but did not say anything else.

Michelle testified that she picked up A.H. and M.M. and took them home to get them ready for school the next day. Michelle started the water in the bathtub, but A.H. did not want to take a bath. A.H. fought as her mother undressed her and put her in the bathtub. Michelle went to the other bathroom to run bathwater for M.M., and when she returned, A.H. was sitting in what Michelle described as a semi-fetal position and holding her knees to her chest. When Michelle had A.H. stand up so that she could wash the rest of her body, Michelle noticed "a mark on her butt" near her tailbone. According to Michelle, the mark looked like A.H. had been pressed against something or had fallen. When Michelle tried to wash between the child's legs, A.H. slapped her hand away and said, "No, Mommy. Don't. It hurts. It hurts." Michelle found redness when she looked between the cheeks of A.H.'s buttocks, and she saw irritation and redness around A.H.'s vaginal area as well. When Michelle saw this, she wrapped A.H. in a towel, hugged her, said that everything was going to be okay, and told A.H. to tell her "if somebody had hurt her."

Michelle and A.H. were crying as they went into Michelle's bedroom and sat on the bed where D.R.M. and C.N.M. were watching television. Michelle testified that "it took her a little bit to tell me" but that A.H. eventually said, "Ernie hurt me." "Ernie" was what the girls called Appellant, who was married to their grandmother. A.H. told her mother that Ernie had "put something up her butt," but A.H. did not know what had been inserted. When D.R.M. and C.N.M. heard what Ernie had done to A.H., the two older girls told Michelle that Ernie had done similar things to them when they were younger.

At trial, D.R.M. testified that, when her family lived with Appellant, she and C.N.M. sometimes slept in their grandmother's bed while she was working and

that Appellant would come into the room and touch her "vaginal area" through her pajamas. D.R.M. said that it usually occurred after Appellant had been drinking, that the earliest she could remember it occurring was when she was around six years old, and that it continued for about three years. When Appellant touched D.R.M., C.N.M. was usually asleep beside her in the bed. D.R.M. recalled a time that Appellant walked to the other side of the bed where C.N.M. was sleeping; D.R.M. said that she told Appellant not to touch C.N.M. because "she was too little." D.R.M. did not tell anyone because she was scared and worried that she would get in trouble. D.R.M. also said that she was embarrassed because "[she] probably could have stopped it, but [she] didn't."

C.N.M. testified that Appellant touched her "vaginal area" while she was sleeping in her grandmother's bed with D.R.M. She said that Appellant touched her both over her clothes and under her clothes. When C.N.M. was about six years old, she sometimes saw Appellant touch D.R.M. and would pretend that she was asleep. When asked about other instances, C.N.M. told the jury that Appellant would take her into the garage or to an abandoned house he owned; she said, "He made me bend down, and he covered my eyes and made me suck his penis." She said that sometimes Appellant covered her eyes with a bandana and sometimes he told her to close her eyes. C.N.M. told the jury that she did not tell anyone because she was embarrassed and scared.

Appellant was charged in three separate indictments with offenses committed against the three girls. In the first indictment, Appellant was charged with a single offense of indecency with D.R.M. by sexual contact, and the jury returned a "not guilty" verdict. The second indictment arose from trial court cause no. 13055 wherein Appellant was charged with two offenses committed against C.N.M. The jury found Appellant guilty of both indecency by contact and aggravated sexual assault. The third indictment arose from trial court cause

4

no. 13056 wherein it alleged three offenses committed against A.H. The trial court submitted only counts two and three to the jury, and it returned a "not guilty" verdict as to count two but found Appellant guilty of the aggravated sexual assault of A.H. as charged in count three of the indictment. The three convictions are the subject of these appeals.

*Sufficiency of the Evidence*

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Citing *McEntire v. State*, 265 S.W.3d 721 (Tex. App.—Texarkana 2008, no pet.), and *Sessums v. State*, No. 06-02-00149-CR, 2003 WL 21473409 (Tex. App.—Texarkana June 27, 2003) (not designated for publication), *vacated and remanded on other grounds*, No. 1261-03, 2003 WL 22855433 (Tex. Crim. App. Nov. 26, 2003) (per curiam). Appellant argues in each of his three evidentiary

challenges that there is no evidence that the child "clearly understood the nature of [the offense]" or that the child "understood" and "testified to evidence constituting the offense." Those cases, however, do not provide authority for Appellant's proposition. In *McEntire*, the court concluded that an outcry statement, in which the defendant was accused of licking the victim's private parts over the course of a summer, was insufficient to support four aggravated sexual assault convictions because the evidence did not show that he had done so on four separate occasions during that period. 265 S.W.3d at 724. In *Sessums*, the court concluded that the victim's complaint of a "sore bobo" was insufficient to prove the element of penetration without evidence linking the soreness to penetration. 2003 WL 21473409, at *3. *McEntire* and *Sessums* do not stand for the proposition that the victim must understand the nature of the offense and of the evidence but, rather, that the child's testimony must be specific enough to permit a rational jury to find each element of the offense beyond a reasonable doubt.

When we assess the sufficiency of the evidence in cases involving child victims, we cannot expect the child victims to testify with the same clarity and ability that we would expect of a mature and capable adult. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). The Court of Criminal Appeals has recognized that expecting "such testimonial capabilities of children would be to condone, if not encourage, the searching out of children to be the victims of crimes such as the instant offense in order to evade successful prosecution." *Id.* Furthermore, the uncorroborated testimony of a child victim is sufficient to support a conviction for indecency with a child and for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref'd).

Appellant also contends that the evidence of his guilt is insufficient because it is not supported by medical evidence. Corroboration of the victim's testimony

6

by medical or physical evidence is not required. *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.); *see Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006).

*Indecency with a Child by Sexual Contact (Trial Court Cause No. 13055)*

In his fifth issue in Cause No. 11-12-00091-CR, Appellant challenges the sufficiency of the evidence supporting his conviction for indecency with a child by contact. A person commits the offense of indecency with a child by contact, as it applies in this case, if the person engages in sexual contact with a child who is younger than seventeen. TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). "Sexual contact" is defined as any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1). The specific intent to arouse or gratify the sexual desires of a person may be inferred from the surrounding circumstances. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009); *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). In the indictment, it was alleged that Appellant intentionally or knowingly engaged in sexual contact with C.N.M., a child younger than seventeen years of age, by touching her genitals.

C.N.M. was eighteen years old at the time of trial, and she testified that Appellant would come into the bedroom where she slept with D.R.M. and that he would touch her "vaginal area." C.N.M. said that she was wearing pajamas on those occasions and that Appellant touched her both over and under her clothes. She told the jury that the touching began when she was about six or seven years old and continued for about three years.

7

Regardless of whether C.N.M. understood "the nature of the sexual contact with her vagina," the jury could have reasonably found that sexual contact with her sexual organ occurred. After considering the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. Appellant's fifth issue in Cause No. 11-12-00091-CR is overruled.

*Aggravated Sexual Assault of C.N.M. (Trial Court Cause No. 13055)*

In his sixth issue in Cause No. 11-12-00091-CR, Appellant challenges the sufficiency of the evidence supporting the conviction for the aggravated sexual assault of C.N.M. A person commits the offense of aggravated sexual assault of a child when, as it applies to this issue, he intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii) (West Supp. 2013). In the indictment, it was alleged that Appellant intentionally or knowingly penetrated the mouth of C.N.M., a child younger than fourteen years of age, with his sexual organ.

C.N.M. told the jury that Appellant took her to the garage or to an abandoned house that he owned and "made [her] bend down, and he covered [her] eyes and made [her] suck his penis." Based upon C.N.M.'s testimony, the jury could have found that Appellant penetrated C.N.M.'s mouth with his penis. In this regard, the testimony of the child victim alone is sufficient to support the conviction. Furthermore, the jury was the sole judge of C.N.M.'s credibility and the weight to be given to her testimony. We conclude that a rational trier of fact could have found the elements of aggravated sexual assault beyond a reasonable doubt. Appellant's sixth issue in Cause No. 11-12-00091-CR is overruled.

*Aggravated Sexual Assault of A.H. (Trial Court Cause No. 13056)*

In his fifth issue in Cause No. 11-12-00092-CR, Appellant challenges the sufficiency of the evidence supporting his conviction for the aggravated sexual

assault of A.H. Appellant argues that the State "chose to have . . . A.H. testify through the outcry witness" and that the outcry witness's testimony was insufficient to prove that A.H. knew the meaning of "anus" or "penetration." Appellant cites no authority, and we find none, requiring that a child victim understand the meaning of certain technical terms in order to testify to the facts that occurred.

A person commits the offense of aggravated sexual assault of a child when, as it applies to this issue, he intentionally or knowingly causes the penetration of the anus of a child by any means. PENAL § 22.021(a)(1)(B)(i). It was alleged in the indictment that Appellant intentionally or knowingly penetrated the anus of A.H., a child younger than fourteen years of age, with an unknown object.

Appellant argues that there was no "evidence as to the 'unknown' object," but he neither explains what evidence the State should have offered nor cites authority requiring such evidence. Because it was alleged in the indictment that Appellant caused the penetration of A.H.'s anus with an unknown object, the State simply had to prove that Appellant penetrated A.H.'s anus by any means and was not required to identify or offer proof of the unknown object. *See, e.g.*, *Coe v. State*, No. 14-10-00929-CR, 2012 WL 1899179, at *13 (Tex. App.—Houston [14th Dist.] May 24, 2012, pet. ref'd) (mem. op.) (not designated for publication) ("All the State was required to prove was that appellant penetrated [the child's] vagina by any means, which could have been an unknown object and not appellant's sexual organ.").

A.H. was five years old at the time of the sexual assault, and her mother, Michelle, testified as the outcry witness. When Michelle was bathing A.H. and tried to wash between her legs, A.H. slapped her hand, started crying, and said, "No, Mommy. Don't. It hurts. It hurts." A.H. said, "Ernie hurt me." A.H. told Michelle that Ernie "had put something up her butt." Michelle testified that she

9

asked A.H., "'What was it? Was it his fingers? Was it something like.'" Michelle continued, "[H]ow do you explain to a five year old what a penis is? And she didn't know. She didn't know what it was. But she knew that something had went up her butt and it hurt." In addition to the pain, Michelle discovered redness near A.H.'s anus.

Regardless of whether A.H. understood the meaning of anus or the meaning of penetration, the jury could have found from Michelle's testimony that Appellant penetrated A.H.'s anus with an unknown object. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) (explaining outcry witness testimony is substantive evidence of guilt for sufficiency review and is alone sufficient to support a conviction). After considering the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of aggravated sexual assault beyond a reasonable doubt. Appellant's fifth issue in Cause No. 11-12-00092-CR is overruled.

*Depositions*

We now address Appellant's first four issues in both appeals wherein he challenges the trial court's order denying his applications to depose D.R.M., C.N.M., Michelle, and Aurora. According to Appellant, the trial court abused its discretion by denying his applications because he established good reason for the depositions in that the witnesses were not "interviewed voluntarily."

The trial court has wide discretion to grant or deny an application to take the deposition of a witness in a criminal proceeding. *James v. State*, 546 S.W.2d 306, 309 (Tex. Crim. App. 1977). We review the trial court's ruling for an abuse of discretion. *Id.* To determine that the trial court abused its discretion when it denied an application, "there must be a showing that the defendant was injured by such action." *Id.* (citing *Beshears v. State*, 461 S.W.2d 122 (Tex. Crim. App. 1970)).

A party who wishes to depose a witness in a criminal proceeding must file an application to take the deposition along with an affidavit that states facts showing "good reason" for taking the witness's deposition. TEX. CODE CRIM. PROC. ANN. art. 39.02 (West Supp. 2013). The trial court is required to hold a hearing to determine if good reason exists, and it must base its decision to "grant or deny the application on the facts made known at the hearing." *Id.* It has been held that "the refusal of a witness who possesses information critical to a significant factor at trial, or who has information exclusively within that witness' knowledge, to talk to the defendant's counsel (or investigator) constitutes good reason for ordering such witness' deposition under Article 39.02." *Morrow v. State*, 139 S.W.3d 736, 743 (Tex. App.—Texarkana 2004, no pet.); *see also Janecka v. State*, 937 S.W.2d 456, 469–70 (Tex. Crim. App. 1996); *James v. State*, 563 S.W.2d 599, 602 (Tex. Crim. App. [Panel Op.] 1978); *Martinez v. State*, 507 S.W.2d 223, 226 (Tex. Crim. App. 1974); *Gentry v. State*, 494 S.W.2d 169, 172 (Tex. Crim. App. 1973).

In each application, Appellant's trial counsel alleged that he mailed a letter in which he "requested a visit" and that "there has been no return call or any attempt by [the witness] to visit with Defendant's attorney." Appellant attached an identical affidavit to each of his four applications, and although the affidavit contained general statements of the type of evidence Appellant hoped to obtain, it contained no facts evidencing an attempt to contact any of the witnesses or their refusal to speak with defense counsel. During two pretrial hearings, Appellant argued generally about the type of evidence that he sought through those depositions, but there were no "facts made known at the hearing" that showed any attempt to contact the witnesses or their refusal to cooperate. Because there were no "facts made known at the hearing" in relation to the witnesses' alleged refusal to cooperate, we cannot conclude that the trial court abused its discretion when it

11

denied the applications.  Appellant's first four issues in Cause No. 11-12-00091-CR and Cause No. 11-12-00092-CR are overruled.

We affirm the judgments of the trial court.


JOHN M. BAILEY

JUSTICE


April 30, 2014

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.